FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2017 OCT 16 PM 12: 00

| | | |
|---|---|---|
| ROBERT PATTEN, | } | Case No. 5:17-cv-478.OC-30PRL |
| PLAINTIFF | } | |
| | } | COMPLAINT FOR DAMAGES |
| v. | } | 15 U.S.C. § 1692, et seq. |
| | } | Fla. Stat. § 559.55, et seq. |
| NEW PENN FINANCIAL, LLC, d/b/a | } | |
| SHELLPOINT MORTGAGE SERVICING, | } | |
| DEFENDANT | } | JURY TRIAL REQUESTED |

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

1. Plaintiff ROBERT PATTEN, through his attorney, brings this action to challenge the actions of Defendant NEW PENN FINANCIAL, LLC, d/b/a SHELLPOINT MORTGAGE SERVICING, for unlawful conduct in connection with debt collection activity.

2. The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA") was designed to protect citizens from such abuses perpetrated by debt collectors like the ones described in this complaint, and to protect citizens like Plaintiff. "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* at § 1692(a)

3. After the U.S. Congress passed the FDCPA, the Florida state legislature decided it wanted to go even further to protect its citizens from the rampant abuses perpetrated by debt collectors. To this

end, the Florida state legislature passed the Florida Consumer Collections Practices Act, Fla. Stat. §§ 559.55-559.785 ("FCCPA"). The FCCPA was designed to protect consumers from harassment like the type described within this complaint, and to protect consumers like Plaintiff. "In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." *Id.* at § 559.552.

4. Plaintiff makes the allegations below on information and belief, with the exception of those allegations that pertain to Plaintiff's personal knowledge.

## JURISDICTION AND VENUE

5. This action partially arises out of Defendant's violations of the Fair Debt Collection Practices Act (FDCPA), over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S. Code § 1692k, and *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), and the Florida Consumer Collections Practices Act (FCCPA), over which the U.S. District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6. Because Defendant conducts business in the State of Florida by repeatedly contacting Florida residents while attempting to collect upon consumer debts, personal jurisdiction is established.

7. Because all tortious conduct occurred while Plaintiff resided in either the City of Lady Lake, County of Lake or the City of Inverness, County of Citrus, and witnesses are located within such locations, venue properly lies with this court.

## PARTIES AND DEFINITIONS

8. Plaintiff is a natural person.

9. Defendant is a "debt collector" as such term is described by the FDCPA, 15 U.S.C. § 1692a(6) and the FCCPA, Fla. Stat. § 559.55(7) because Defendant used instrumentalities of interstate

commerce within this state, the principal purpose of which is the collection of debts. Additionally or alternatively, Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. Plaintiff was allegedly obligated to pay a "debt," as such term is described by the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, Fla. Stat. § 559.55(6) because he was allegedly obligated to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

11. Plaintiff is a "debtor" and a "consumer" as those terms are described by the FDCPA, 15 U.S.C. § 1692a(3) and the FCCPA, Fla. Stat. § 559.55(8) because he was allegedly obligated to pay a debt.

## FACTUAL ALLEGATIONS

12. Approximately in early-middle 2015, Defendant initiated debt collection procedures against Plaintiff for an alleged home loan debt related to Plaintiff's former owner-occupied residential property in Maryland and allegedly owned by a third party. Plaintiff no longer lives at that property.

13. On October 20, 2015, Plaintiff mailed to Defendant a letter, via certified mail, stating, among other things, that Plaintiff did not owe the alleged debt; that even if Plaintiff did owe the alleged debt, it was time-barred; that Plaintiff will not be paying this alleged debt; and that Plaintiff wanted Defendant to cease communication with Plaintiff regarding this alleged debt.

14. On November 10, 2015, Defendant mailed to Plaintiff a letter presumably in response to the letter described in paragraph 13, above. This letter states, among other things, that "the loan has been updated as [cease and desist];" that "you should not receive any further communication from [Defendant], 'except for those which may be legally required;'" but that "the loan is still collectible"

and "[Defendant] will continue to service the loan according to the original agreement and protect the investor's rights in the associated property."

15. On or before March 30, 2016, Defendant called Plaintiff at least once in an attempt to collect upon the alleged debt.

16. On March 30, 2016, Plaintiff mailed to Defendant a letter, stating, among other things, that he had received calls from Defendant on March 30, 2016; that he wanted Defendant not to contact him again for debt collection purposes; and that he intended to pursue legal action if Defendant did in fact contact him again for debt collection purposes.

17. On April 19, 2016, Defendant mailed to Plaintiff a letter presumably in response to the letter described in paragraph 16, above. This letter states, among other things, that "[Defendant] previously advised your account would be updated as [cease and desist]. However, you continue to receive debt collection calls. Please be advised, we have updated the loan as [cease and desist]. You should not receive any further communication from [Defendant], except for those which may be legally required. We would like to apologize for any inconvenience regarding this issue."

18. On May 4, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter, curiously titled a "mortgage statement," contained, among other things, the "next due date" and the alleged "amount due;" a rebuke that "you are late on your mortgage payments;" a warning that "failure to bring your loan current may result in fees and foreclosure – the loss of your home;" as well as a portion serving as a detachable payment coupon, stating "detach and return with payment" and also containing the alleged "amount due;" the "property address;" Defendant's mailing address; and a place in which Plaintiff was to write the "total amount enclosed."

19. On June 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

20. On July 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

21. On July 8, 2016, Plaintiff mailed to Defendant a letter, stating, among other things, that Plaintiff has letters from Defendant where Defendant promised to "cease and desist;" that Defendant nevertheless continues to mail dunning letters to Plaintiff; and that Plaintiff demands Defendant stop sending him debt collection communications.

22. On August 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

23. On September 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

24. On October 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

25. On October 11, 2016, Defendant mailed to Plaintiff a letter stating, among other things, that Plaintiff "is receiving this notice ... because the maturity date of your loan is approaching and the remaining balance is due at that time." This letter also contains, at the extreme bottom of the page, a

notification to "see reverse side or attached for an important statement of your rights." When the letter is flipped over, it is only there, on the back, typed in the smallest font size of the letter, where Defendant includes the phrase "this communication is from a debt collector."

26. On November 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

27. On December 7, 2016, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

28. On December 27, 2016, Defendant mailed to Plaintiff a letter stating, among other things, that Plaintiff "is receiving this notice ... because the maturity date of your loan is approaching and the remaining balance is due at that time." This letter also contains, at the extreme bottom of the page, a notification to "see reverse side or attached for an important statement of your rights." When the letter is flipped over, it is only there, on the back, typed in the smallest font size of the letter, where Defendant includes the phrase "this communication is from a debt collector." This letter appears to be identical to the letter described in paragraph 25, above.

29. On January 7, 2017, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

30. On February 7, 2017, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

31. At some point before February 14, 2017, Plaintiff retained counsel for the purposes of pursuing Defendant for violations of debt collection laws.

32. On February 14, 2017, Plaintiff's attorney e-mailed Defendant's attorney and informed him that Plaintiff was represented by counsel and that Plaintiff's attorney believed Defendant had violated debt collection laws.

33. On March 1, 2017, Defendant's attorney confirmed the receipt of the e-mail described in paragraph 32, above, and indicated that Defendant was made aware of Plaintiff's status as being represented by counsel with regards to the alleged debt.

34. On March 7, 2017, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

35. On July 7, 2017, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

36. On August 7, 2017, Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt. This dunning letter appears identical to the dunning letter described in paragraph 18, above, except for the dates and the then-current amount allegedly due.

37. Plaintiff does not currently possess dunning letters from April, May, or June, 2017; or from September or October, 2017; however, given the pattern, it is very likely that Defendant mailed to Plaintiff a dunning letter seeking payment on the alleged debt every month on the 7th, including these months, and Plaintiff believes the same will be found in discovery. Additionally, among the dunning

letters Defendant sent to Plaintiff, at least one of them does not contain the language "this communication is from a debt collector" or any substantially-similar sentence.

38. Between February 14, 2017 and October 6, 2017, Plaintiff's attorney and Defendant's attorney communicated over forty times via e-mail and a handful of times via the telephone regarding this case; including multiple times where Plaintiff's attorney reminded Defendant's attorney that Plaintiff is represented by counsel with regard to the alleged debt. All the same, despite actual knowledge that Plaintiff is represented by counsel with regard to the alleged debt, Defendant continued to send Plaintiff the dunning letters described in paragraphs 34-36, above, and likely those described in paragraph 37, above, as well.

39. On July 1, 2014, the Maryland state legislature changed the statute of limitations on collecting unpaid balances based on a "deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by owner–occupied residential property." Md. Code, Cts. and Jud. Proc. § 5-102, et seq. According to Maryland law, such instruments signed "under seal" are generally subject to a special twelve year statute of limitations. Id. However, after the July 1, 2014 legislation, the Maryland legislature carved out "owner-occupied residential property" from the twelve year "under seal" duration and moved it to the general three year statute of limitations. Id. The July 1, 2014 legislation also explicitly indicated that all unpaid balances prior to July 1, 2014 will be time-barred on or before July 1, 2017, at the latest. Md. Acts 2014, c. 592, § 4; Md. S.B. 708 (2014).

## FIRST CLAIM FOR RELIEF

### Violation of the FDCPA, 15 U.S.C. § 1692, et seq.

40. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1-39, as if fully set forth herein.

41. By contacting Plaintiff for the purposes of collecting upon an alleged debt that Plaintiff does not actually owe in the manner alleged by Defendant, Defendant has falsely represented the character, amount, or legal status of a debt, and has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692e(2)(A).

42. By contacting Plaintiff for the purposes of collecting upon an alleged debt despite having actual knowledge that Plaintiff is represented by an attorney with respect to such debt, Defendant has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692c(a)(2).

43. By contacting Plaintiff for the purposes of collecting upon an alleged debt after receiving written notification that Plaintiffs wished for Defendant to cease communication with Plaintiffs, Defendant has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692c(c).

44. By contacting Plaintiff for the purposes of collecting upon an alleged debt and, while doing so, represented or implied that Defendant might cause Plaintiff to "lose his home" in a foreclosure if he did not pay Defendant, and such is not an action Defendant can lawfully pursue or take, Defendant has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692e(4).

45. By contacting Plaintiff for the purposes of collecting upon an alleged debt and, while doing so, threatened that Defendant might cause Plaintiff to "lose his home" in a foreclosure if he did not pay Defendant, and such is not an action Defendant can legally take, Defendant has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692e(5).

46. By contacting Plaintiff for the purposes of collecting upon an alleged debt while failing to indicate that the communication was from a debt collector, and such communication was not their first, Defendant has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692e(11).

47. By contacting Plaintiff for the purposes of collecting upon an alleged debt that Plaintiff does not actually owe in the manner alleged by Defendant, Defendant has used unfair and unconscionable means to collect or attempt to collect a debt, including the collection of an amount not expressly authorized by an agreement creating the debt or permitted by law, and has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692f(1).

48. By contacting Plaintiff for the purposes of collecting upon an alleged debt after receiving written notification that Plaintiff disputes the alleged debt, Defendant has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692g(b).

49. The FDCPA provides for actual damages sustained as a result of violation of the statute, 15 U.S.C. § 1692k(a)(1).

50. The FDCPA provides for statutory damages of $1,000.00 for violation of the statute, 15 U.S.C. § 1692k(a)(2).

51. The FDCPA provides for reasonable attorney's fees and costs in any successful action, 15 U.S.C. § 1692k(a)(3).

52. 15 U.S.C. § 1692k(a)(1) entitles Plaintiff to actual damages for Defendant's violations of the FDCPA, 15 U.S.C. § 1692, et seq., and Plaintiff is so entitled.

53. 15 U.S.C. § 1692k(a)(2) entitles Plaintiff up to $1,000.00 in statutory damages for Defendant's violations of the FDCPA, 15 U.S.C. § 1692, et seq., and Plaintiff is so entitled.

54. 15 U.S.C. § 1692k(a)(3) entitles Plaintiff to reasonable attorney's fees and costs upon successful prosecution of this action, and Plaintiff is so entitled.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendant and provides Plaintiff with the following relief:

(a) Actual damages in the maximum amount the court deems proper and may provide;

(b) Statutory damages in the amount of $1,000.00;

(c) Reasonable attorney's fees and costs;

(d) And any other relief as the court deems proper and may provide.

Plaintiff requests a jury for all claims so triable.

## SECOND CLAIM FOR RELIEF

### Violation of the FCCPA, Fla. Stat. § 559.55, et seq.

55. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1-39, as if fully set forth herein.

56. By contacting Plaintiff for the purposes of collecting upon an alleged debt that Plaintiff does not actually owe in the manner alleged by Defendant, despite Plaintiff's repeated insistence that he does not owe the alleged debt and that even if he did owe the debt, the debt would be time-barred anyway, Defendant has engaged in illegal practices under the FCCPA, Fla. Stat. § 559.72(9).

57. By contacting Plaintiff for the purposes of collecting upon an alleged debt despite having actual knowledge that Plaintiff is represented by an attorney with respect to such debt, Defendant has engaged in illegal practices under the FCCPA, Fla. Stat. § 559.72(18).

58. The FCCPA provides for actual damages for violation of the statute, Fla. Stat. § 559.77(2).

59. The FCCPA provides for statutory damages of $1,000.00 for violation of the statute, Fla. Stat. § 559.77(2).

60. The FCCPA provides for reasonable attorney's fees and costs in any successful action, Fla. Stat. § 559.77(2).

61. The FCCPA provides for a court to impose punitive damages and such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part, Fla. Stat. § 559.77(2).

62. Fla. Stat. § 559.77(2) entitles Plaintiff to actual damages for Defendant's violations of the FCCPA, Fla. Stat. § 559.72, et seq., and Plaintiff is so entitled.

63. Fla. Stat. § 559.77(2) entitles Plaintiff to $1,000.00 in statutory damages for Defendant's violations of the FCCPA, Fla. Stat. § 559.72, et seq., and Plaintiff is so entitled.

64. Fla. Stat. § 559.77(2) entitles Plaintiff to punitive damages for Defendant's violations of the FCCPA, Fla. Stat. § 559.72, et seq., and Plaintiff is so entitled.

65. Fla. Stat. § 559.77(2) entitles Plaintiff to equitable relief for Defendant's violations of the FCCPA, Fla. Stat. § 559.72, et seq., and Plaintiff is so entitled.

66. Fla. Stat. § 559.77(2) entitles Plaintiff to reasonable attorney's fees and costs upon successful prosecution of this action, and Plaintiff is so entitled.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendant and provides Plaintiff with the following relief:

(a) Actual damages in the maximum amount the court deems proper and may provide;

(b) Statutory damages in the amount of $1,000.00;

(c) Punitive damages in the maximum amount as the court deems proper and may provide;

(d) Equitable relief as the court deems proper and may provide;

(e) Reasonable attorney's fees and costs;

(f) And any other relief as the court deems proper and may provide.

Plaintiff requests a jury for all claims so triable.

Respectfully submitted this 9th day of October, 2017,

    By Plaintiff's attorney: /s/ Nicholas Michael Murado
    Nicholas Michael Murado
    Florida Bar # 102769
    Murado Law, P.A.
    2010 S.W. 99th Avenue
    Miramar, Florida, 33025
    Telephone: 754-816-2196
    E-mail: muradolaw@gmail.com